UNGER (HALL v.). See Case No. 5,949.

UNGER (UNITED STATES v.). See Case No. 16,595.

## Case No. 14,343.

### UNGEWITTER v. VON SACHS.

[4 Ben. 167;[1] 3 N. B. R. 723 (Quarto, 178); 1 Am. Law T. Rep. Bankr. 224; 3 Am. Law T. 195.]

District Court, S. D. New York. May, 1870.

BANKRUPTCY—BREACH OF TRUST—RIGHTS OF ASSIGNEE—PREFERENCE.

1. U. requested S. & Co. to invest his funds in their hands in a certain stock. They informed him that they had done so, but in fact took the shares in their own name, and soon afterwards hypothecated them to a bank, as security for a loan. They subsequently failed, and on the day of their failure deposited with B. L. & B. certain securities with which to release the stock hypothecated. The bank refusing to return the stock, the securities were sold, the proceeds remaining in the possession of B. L. & B. S. & Co. having been adjudged bankrupts and an assignee appointed, U. filed a bill in equity against the assignee and B. L. & B., to recover those pro-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ceeds. as representing the stock. *Held,* that, with respect to other creditors, S. & Co., when they became insolvent, were merely debtors to U. for the value of the stock.

2. No lien or trust arose in respect to the securities deposited with B. L. & B., or their proceeds, that was not revoked by the appointment of the assignee, to whom the property in them passed, free of any charge in favor of U.

[Cited in Hosmer v. Jewett, Case No. 6,713.]

3. To hold the contrary would be to give U. a preference contrary to the provisions of the bankruptcy act [of 1867 (14 Stat. 517)].

[This was a suit by Edward L. Ungewitter against William Von Sachs, assignee of the firm of Schepeler & Co., and the firm of Bowdoin, Larocque & Barlow.

[See Cases Nos. 12,452 and 12,453.]

B. Roelker, for plaintiff.

T. C. T. Buckley and J. K. Hill, for assignee in bankruptcy.

W. W. McFarland, for Bowdoin, Larocque & Barlow.

BLATCHFORD, District Judge. This is a final hearing, on pleadings and proofs, in a suit in equity. The suit is brought to determine whether the plaintiff, or the assignee in bankruptcy of Schepeler & Co., is entitled to certain moneys in the hands of the defendants Bowdoin, Larocque & Barlow. The plaintiff, being a resident of Wurzburg, in Bavaria, and having funds in the hands of Schepeler & Co., requested them, in 1862 and 1863, to invest for him in the stock of the Metropolitan Gas Light Company, a New York corporation, sufficient of those funds to amount to $5,600 at par of such stock. They did so, subscribing for 56 shares of the par value of $100 each. and advising him that it was an investment for his account, and speaking of the 56 shares, in their letters to him, as his shares. They collected dividends from time to time on the 56 shares, and advised him of such collection. They in fact took the 56 shares in their own name, but he was not advised as to whether the shares were in his name or not. They made a single subscription, in their own name, for 98 shares, of which the 56 shares formed a part, 29 shares belonging to another party, and 13 shares to themselves. The 98 shares stood in their own name on the books of the company at all times, and they received a certificate for 98 shares in their own name from the company in 1863. As early as October, 1864, Schepeler & Co. hypothecated their certificate with the Phenix Bank of the city of New York as security for money then loaned by that bank to them, and it always afterwards remained in the possession of that bank, or of its successor, the Phenix National Bank, under a pledge for money loaned, the loan being renewed from time to time. The last renewal was in May, 1868, a loan which never was paid in full, but amounted to $67,500 at the time of the failure of Schepeler & Co.

Schepeler & Co. failed on the 15th of May, 1869. On that day, and at a time when they were insolvent and knew themselves to be so, or else were contemplating insolvency as inevitable, one of the firm went to the office of Bowdoin, Larocque & Barlow, the legal advisers of the firm, and, after making known to them the state of their pecuniary affairs, and the fact that the Phenix National Bank held on pledge the 85 shares of the Metropolitan Gas Light Company stock and other securities, which really belonged to other persons than Schepeler & Co., put into the hands of Bowdoin, Larocque & Barlow certain securities, which, or the proceeds of which, he requested should be used to replace or repurchase the 85 shares of stock and the other securities so really belonging to other persons, and also signed and delivered to Bowdoin, Larocque & Barlow a written order on the bank, requesting them to deliver to Bowdoin, Larocque & Barlow the 85 shares of stock and certain other specified securities. The 85 shares of stock were not delivered up by the bank and were not replaced or repurchased. Bowdoin, Larocque & Barlow applied to the bank, and offered to redeem such stock. a few days after the failure of Schepeler & Co., and to pay the highest market price for it, but the offer was refused. The offer was renewed a week or two later, and refused again. The securities so placed in the hands of Bowdoin, Larocque & Barlow having been sold, there remained in their hands, of the proceeds, after deducting what was expended in the redemption of the other securities which were to be redeemed, a sum of money which, with interest to the 11th of November, 1869, amounted, on that day, to $11,981 99. That sum was, on that day, deposited by Bowdoin, Larocque & Barlow in the New York Life Insurance and Trust Company, to their own credit, payable after ten days' notice, with interest at 4 per cent. per annum. and they received therefor a certificate of deposit, which they hold, subject to the decree of this court as to who is entitled to the money which it represents.

The claim of the plaintiff is, that the money in the hands of Bowdoin. Larocque & Barlow represents the 85 shares of stock, and that the proportion of it which represents 56 shares ought to be paid to him. and ought not to go to the assignee in bankruptcy.

However great a breach of trust was committed by Schepeler & Co. towards the plaintiff, yet, on the facts of the case, Schepeler & Co., when they became insolvent, were merely debtors to the plaintiff for the value of the 56 shares of stock. as against their other creditors, now represented by the assignee in bankruptcy, and as respected the rights of such other creditors, under the bankruptcy act. The securities themselves, whose sale has resulted in the proceeds in question, never belonged to the plaintiff. and, so far as appears. were not, prior to the time when the rights of the assignee in bankruptcy intervened, put into the hands of the plaintiff, or of any agent of his, or of any person with his

assent or privity, nor was the placing of such securities in the hands of Bowdoin, Larocque & Barlow made known to the plaintiff, or adopted or ratified by him, prior to the transfer of the title to them to the assignee in bankruptcy. The property in them was in no manner changed, nor did any legal or equitable lien, or interest, or trust, or charge, arise in respect to them, which would not have been revocable by Schepeler & Co. themselves, at least, at all times before the transaction was made known to the plaintiff. It was not made known to the plaintiff, or to any agent of his, until some time after the appointment of the assignee in bankruptcy. Such appointment must, on the facts, be considered as a revocation of anything done by Schepeler & Co., if any such revocation were needed.

Moreover, the delivery of the securities having been made for a specified purpose, and the purpose not having been carried out, because of the refusal of the bank to deliver the shares, the property in the securities remained in Schepeler & Co., and passed to the assignee in bankruptcy, free and clear from any charges in favor of the plaintiff.

Independently, however, of these views, the court is in fact asked to do, in favor of the plaintiff, what the bankruptcy act expressly forbids. It is asked to give to the plaintiff, as a creditor, a preference. If Schepeler & Co. had given directly to the plaintiff himself, the securities which they placed in the hands of Bowdoin, Larocque & Barlow, they being then insolvent, or acting in contemplation of insolvency, and intending to prefer the plaintiff, and he having the knowledge which Bowdoin, Larocque & Barlow had, the transaction would have been a fraud on the act and void, and the assignee could have recovered back the securities, or their value, from the plaintiff. The bill must be dismissed, with costs.